**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| KARAMAN KEVLISHVILI; NAZO KEVLISHVILI,<br><br>    Petitioners,<br><br>v.<br><br>LORETTA E. LYNCH, Attorney General,<br><br>    Respondent. | No. 12-72801<br><br>Agency Nos.    A097-881-464<br>                        A097-881-465<br><br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 4, 2015
Pasadena, California

Before: W. FLETCHER and GOULD, Circuit Judges and CHRISTENSEN,[**] Chief
District Judge.

Petitioners Karaman Kevlishvili (Kevlishvili) and his wife Nazo Kevlishvili

petition for review of a final order of the Board of Immigration Appeals (BIA)

dismissing their appeal from an immigration judge's (IJ) decision finding them

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Dana L. Christensen, Chief District Judge for the U.S.
District Court for the District of Montana, sitting by designation.

removable from the United States, denying their application for asylum and withholding of removal, and denying their claim for relief under the Convention Against Torture. We grant the petition and remand to the BIA for further proceedings.

Because Kevlishvili filed the asylum application before May 11, 2005, we review this case under pre-REAL ID Act case law. *See Sinha v. Holder*, 564 F.3d 1015, 1021 & n.3 (9th Cir. 2009). We review the adverse credibility determination for substantial evidence. *Gui v. I.N.S.*, 280 F.3d 1217, 1225 (9th Cir. 2002). The BIA adopted several of the IJ's reasons for finding Kevlishvili not credible. In each instance, the BIA relied on alleged inconsistencies between a "narrative statement" accompanying Kevlishvili's application and his testimony. We find that the BIA's adverse credibility determination is not supported by substantial evidence. We address each of the BIA's reasons for its determination in turn.

1. Kevlishvili's narrative statement says that he and "two employees . . . were beaten" by Georgian police in his office, but he testified that police beat him, his assistant, and a "tractor driver." The BIA erroneously concluded that these two statements are inconsistent. Kevlishvili did not offer testimony about his assistant's or the tractor driver's employment status; instead, he identified them by their professional roles. The statement that the third person in his office was a

"tractor driver" does not indicate that the driver was not Kevlishvili's employee. Kevlishvili was farming on leased land, and it was entirely plausible that he employed a person who drove a tractor on the farm.

2. Kevlishvili's narrative statement says that he complained to the police about the aforementioned incident, but the police failed to address it. He testified that the police forced him to retract his complaint. The BIA erroneously concluded that his narrative statement and his testimony are inconsistent. Kevlishvili's story was consistent; he was persecuted by Georgian police for his political beliefs, he complained to the authorities, and the authorities did nothing to prevent his future persecution.

3. Kevlishvili's narrative statement states that at a political rally held in March 2003, "V. Rcheumeshvili, Mindeli and other members of our party made speeches. Among the speakers was my son, Alexander." He testified that he also gave a speech. The BIA erroneously concluded that these statements are inconsistent. Kevlishvili's narrative statement does not say that the speakers mentioned by name were the only speakers, and it does not say that he did not make a speech. Indeed, the narrative statement says that "other members of our party made speeches." Kevlishvili was not inconsistent about who spoke at the

3

political rally, and "the mere omission of details is insufficient to uphold an adverse credibility finding." *Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000).

4.  Kevlishvili's narrative statement says that in May 2003, police arrested "a few active members of our party, including my son, Alexander, and some peaceful village residents." Kevlishvili testified that the police "arrested approximately between 40, 50, more like 40 people." When asked to elaborate, Kevlishvili explained that 40 people were arrested and then released, but a few people were detained. The BIA erroneously concluded that these statements are inconsistent. Kevlishvili's assertion that 40 people were arrested is consistent with his statement that a few members of his party were arrested *along with* "some peaceful village residents." Moreover, Kevlishvili's interchangeable use of the words "detain" and "arrest" suggests at most that he uses those words differently from a trained American lawyer. It does not suggest that his story changed.

5.  According to Kevlishvili, his son was killed in May 2003. The details of how his son's body was found and where Kevlishvili first saw the body were unclear from his narrative statement. When asked to elaborate, Kevlishvili explained that a passerby found his son's body along the bank of a river and that Kevlishvili first saw the body at the morgue. In the hearing, the IJ found this

4

explanation convincing. Accordingly, to the extent the adverse credibility finding was based on this incident, it is not supported by substantial evidence.

We find that the adverse credibility finding is not supported by substantial evidence and that Kevlishvili is credible. The IJ explained in his decision that, were it not for his adverse credibility finding, he would find that Kevlishvili had shown that he and Nazo had suffered past persecution. Accordingly, we hold that Kevlishvili has shown that he and Nazo have suffered past persecution.

However, the IJ found that the presumption of a well-founded fear of future harm had been rebutted for two reasons. First, the IJ found that Kevlishvili could safely return to Georgia because he could choose to live in a different area of the country from his previous home. Second, the IJ found that Georgia's political conditions have changed since the Kevlishvilis' departure and that they no longer have to fear the regime of former President Shevardnadze. Since the BIA did not address these alternative findings, we remand for further consideration by the BIA.

**PETITION GRANTED AND REMANDED.**

5